UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

PAUL C. TRAYLOR                                     CIVIL ACTION

VERSUS                                              NUMBER 08-840-RET-DLD

D.R. HORTON, INC.

### MAGISTRATE JUDGE'S REPORT

This copyright infringement case is before the court on defendant's motion to dismiss or, alternatively, motion to compel arbitration (rec. doc. 17) and on plaintiff's cross motion for partial summary judgment (rec. doc. 19), both of which are opposed and have been referred to the undersigned for a report and recommendation.

**Factual Background**

Plaintiff Paul Traylor is a professional draftsman who has performed drafting work for many companies throughout his career.  Between April 2002 and February 2004, plaintiff worked as an independent contractor drafting house plans for PCC Home Builders, Inc. (PCC).  There is no written agreement that governs the relationship between plaintiff and PCC, but PCC apparently paid plaintiff for certain house plans, which included the right to reuse those plans. Plaintiff contends that he retained ownership of the copyright in all of the plans drafted for PCC and that PCC did not have the right to transfer the plans to another entity.[1]

---

[1] Attached to plaintiff's complaint are the plans prepared for PCC and a copy of 50 copyright applications stamped "Received" by the Copyright Office on October 24, 2008 (rec. doc. 1, Exhibits X and Y). In order to establish subject matter jurisdiction under Section 411, the Fifth Circuit requires only that the Copyright Office actually receive the application, deposit, and fee before a plaintiff files an infringement action. *See Positive Black Talk, Inc. v. Cash Money Records, Inc.*, 394 F.3d 357 (5th Cir. 2004), *citing Lakedreams v. Taylor*, 932 F.2d 1103, 1108 (5th Cir.1991); 17 U.S.C. §411.

Plaintiff stopped drafting plans for PCC in 2004 when he was called to active duty by the Army National Guard to serve in Afghanistan. In or around March 2006, PCC and defendant D. R. Horton, Inc. entered into an asset purchase agreement in which defendant agreed to purchase the assets of PCC, including certain house plans prepared by plaintiff for PCC, which are specifically identified in the attachments to the asset sale documents (rec. doc. 20-5).

After plaintiff's return from Afghanistan, he was hired by defendant to work as an estimator.[2] At oral argument, counsel explained that plaintiff's work as an estimator required him to review house plans and to estimate the building costs based on the plans. Neither side contends that plaintiff's job as an estimator had anything to do with drafting house plans, and it is undisputed that plaintiff was never employed by either PCC or defendant as a draftsman. Plaintiff's counsel acknowledged at oral argument that plaintiff was aware, however, of defendant's use of his plans during his employment as an estimator. Defendant terminated plaintiff's employment as an estimator on February 9, 2007. Neither party introduced evidence regarding the reason(s) for plaintiff's termination.

During plaintiff's employment as an estimator with defendant, he signed two agreements. One was an arbitration agreement and the other a separation agreement. As a condition of employment with defendant, plaintiff and defendant entered into a "Mutual Arbitration Agreement," which provides that "all disputes and claims between them,

---

[2] Defendant stated at oral argument that plaintiff may have worked outside his job description as an estimator while employed by defendant. Defendant supported its position by referring to two house plans, the Ascension-Gonzales plan and the Claiborne-Antioch plan, that are in its possession, but that were not listed in the asset sale documents (rec. doc. 20-5). Defendant hypothesized that these two plans must have been drafted while plaintiff was employed by defendant (rec. doc. 20, p. 10). Plaintiff disputes that he drafted any house plans while employed by Horton, but offered no evidence to support his position.

including those relating to Employee's employment with the Company and any separation therefrom, . . . shall be determined by final and binding arbitration" (rec. doc. 17-2). The agreement also provides that "[a]ny controversy over whether a dispute is arbitrable or as to the interpretation of this Agreement with respect to such arbitration will be determined by the arbitrator." *Id.*

Upon termination, plaintiff was presented with a "Separation Agreement and General Release," which provides that plaintiff agrees to release certain claims against defendant in exchange for payment in the amount $1,615.38 (two weeks of employment), plus an additional $500 (rec. doc. 17-2).[3] In addition to other relevant terms, the Separation Agreement advises plaintiff to consult with an attorney prior to executing the agreement and notifies him of the rescission period applicable to the agreement. Plaintiff chose to execute the Separation Agreement at the time of his termination on February 9, 2007, without first consulting with an attorney.

On February 21, 2007, after the rescission period had expired, defendant sent plaintiff an executed copy of the Separation Agreement and the payment due pursuant to the terms of the Separation Agreement. Shortly thereafter, on March 1, 2007, plaintiff consulted with an attorney and attempted to rescind the Separation Agreement by returning the payment tendered by defendant.

On December 30, 2008, plaintiff filed suit against defendant, alleging that defendant committed copyright infringement by using house plans that plaintiff drafted for PCC without

---

[3] The release language of the Separation Agreement provides that plaintiff "... releases Horton from any and all lawsuits, civil actions, arbitration claims, suits, demands, or liabilities whatsoever, in law or in equity, whether known or unknown, asserted or unasserted, having to do with, connected with, relating to, or arising out of employment with Horton, or termination therefrom." (Rec. Doc. 17-2).

obtaining his permission.  Plaintiff seeks lost profits, additional profits pursuant to 17 U.S.C. §504, and an injunction enjoining defendant Horton from further copying his plans. The parties agree that the primary issues in the complaint involve the nature and scope of plaintiff's license agreement with PCC and whether PCC had ownership rights in plaintiff's plans that could be transferred to defendant in the asset sale.  The parties also agree that these issues do not arise out of plaintiff's employment with defendant Horton.  Finally, there is no dispute that defendant Horton used plaintiff's plans while he was employed by defendant and that plaintiff was aware of defendant's use of the plans.

Defendant urges the court in its motion either to dismiss the lawsuit or to send it to arbitration.  Plaintiff urges the court in his motion for partial summary judgment to find that the Separation Agreement does not release defendant from plaintiff's copyright claims both because the copyright claims are beyond the scope of the Separation Agreement, and even if not, plaintiff successfully rescinded the agreement.

**Arguments of the Parties**

Defendant claims that the house plans were purchased pursuant to the asset sale and it had a right to use them.  Alternatively, plaintiff granted to defendant an implied license to use the plans and/or some of the plans were obtained via a "work for hire doctrine" because two of the plans used could have been drafted while plaintiff was employed by defendant.[4]  Moreover, plaintiff released any and all claims he might have had against defendant when he executed the Separation Agreement.  And last, defendant

---

[4] Defendant did not offer evidence to prove that the two house plans at issues were drafted by plaintiff while he was employed by defendant because the parties have not had an opportunity to conduct discovery on the merits of this matter.  Rather, defendant noted that the two plans were not listed in the asset purchase agreement between PCC and defendant and, therefore, were arguably drafted while plaintiff was employed by defendant.

concludes that all of these issues fall within the scope of the Mutual Arbitration Agreement, or, at the least, must be sent to the arbitrator to decide which, if any, of these issues are arbitrable.

Plaintiff counters that the underlying issues of copyright infringement have nothing whatsoever to do with his employment, and both the Mutual Arbitration Agreement and the Separation Agreement are employment contracts. Plaintiff further contends that he successfully rescinded the Separation Agreement; therefore, he could not have released any claims regardless of the scope of the agreement. Plaintiff further argues that the Federal Arbitration Act is inapplicable, at least to the copyright claims. Plaintiff ultimately agreed at oral argument that the issue of whether or not plaintiff successfully rescinded the separation agreement is subject to arbitration.

### Substantive Law and Discussion

The FAA was enacted to eliminate the judiciary's historic hostility to arbitration agreements. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006). Section 2 of the FAA embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

*Id.*, at 1207, *citing* 9 U.S.C. §2.

Any party to an arbitration agreement may move to compel arbitration under an arbitration agreement. *See* 9 U.S.C. §4. Section 3 of Title 9 provides that " . . . the court

. . . being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall . . . stay the trial of the action until such arbitration . . . ." 9 U.S.C. §3; *see also Folse v. Richard Wolf Med. Instruments Corp.*, 56 F.3d 693, 606 (5th Cir. 1995). The district court has no discretion to deny the stay under Section 3 if the issues in a case are within the reach of the agreement. *Id., citing In re Complaint of Hornbeck Offshore Corp*, 981 F.2d 752, 754 (5th Cir. 1993).

In adjudicating a motion to compel arbitration under the FAA, courts generally conduct a two-step inquiry. *Brown v. Pacific Life Ins. Co.*, 462 F.3d 384, 396 (5th Cir. 2006). Thus, the court's analysis usually is limited to deciding whether the parties agreed to arbitrate the dispute, which involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties and (2) whether the dispute falls within the scope of that arbitration agreement. *Brown v. Pacific Life Ins. Co.*, 462 F.3d at 396; *see also Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996).

In the first round of briefing on the motions before the court, the parties seemed to want the court to decide the issues surrounding the Separation Agreement; that is, whether it included plaintiff's copyright claims, and if so, whether plaintiff rescinded the release. By the time the court held oral argument, defendant sought to have all issues subject to arbitration, and plaintiff agreed that the issue of whether or not the Separation Agreement was rescinded is one for the arbitrator to decide. Thus, there is no dispute that the parties entered into an arbitration agreement and that at least one issue involving the Separation Agreement falls under that agreement. The court is left with the more narrow issue involving the scope of the Mutual Arbitration Agreement, and the even more narrow issue

of who decides whether or not a particular dispute is arbitrable under the terms of the agreement between the parties.

"[A]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes – but only those disputes – that the parties have agreed to submit to arbitration." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995).   Ordinarily, as the United States Supreme Court has explained, "[t]he question whether the parties have submitted a particular dispute to arbitration, *i.e.*, 'question of arbitrability,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002)*, citing AT&T Technologies, Inc.v. Communications Workers*, 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986); *Agere Systems, Inc. v. Samsung Electronics Co., Ltd.*, 560 F.3d 337 (5th Cir. 2009).   If the court concludes that the parties to the agreement did clearly and unmistakably intend to delegate the power to decide arbitrability to an arbitrator, the court should perform a second, more limited inquiry to determine whether the assertion of arbitrability is "wholly groundless."   *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1371 (Fed.Cir. 2006); *Agere Systems, Inc.,* 560 F.3d at 340.

Thus, the court first considers whether the parties intended the court or the arbitrator to determine arbitrability.  The Mutual Arbitration Agreement specifically provides that "[a]ny controversy over whether a dispute is arbitrable or as to the interpretation of this Agreement with respect to such arbitration will be determined by the arbitrator" (rec. doc. 17-2).  This language clearly and unequivocally reserves the decision of the scope of the agreement to the arbitrator.[5]   Thus, under the agreement signed by the parties, the literal

---

[5] The Mutual Arbitration Agreement also provides that "[t]he arbitrator selected by the parties will administer the arbitration according to the National Rules for the Resolution of Employment Disputes (or
(continued...)

-7-

wording provides that the arbitrator has the authority to determine which issues are subject to arbitration and, specifically, whether the language of the Mutual Arbitration Agreement compels arbitration of plaintiff's copyright claims and of issues regarding the scope and enforceability of the Separation Agreement.[6]

This mandate, however, is not without some limitation. The jurisprudence requires further inquiry. The "wholly groundless" inquiry allows the court to determine that it is "satisfied" pursuant to Section 3 of the FAA that the issues are referable to arbitration under the agreement, while also preventing a party from asserting any claim at all, no matter how divorced from the parties' agreement, to force an arbitration. *Qualcomm Inc. V. Nokia Corp.,* 466 F.3d 1366, 1373, n. 5 (Fed. Cir. 2006). This inquiry is quite limited, however, for to go too far and actually decide whether or not an issue falls within the scope of the agreement invades the province of the arbitrator. The "wholly groundless" standard seems to be closer to what is often described as a "colorable" claim, or as the Fifth Circuit recently stated in *Agere* as justification for allowing the arbitrator to decide the scope of arbitration

---

[5](...continued)
successor rules) of the American Arbitration Association ("AAA"), except where such rules are inconsistent with this Agreement, in which the terms of this Agreement will govern" (rec. doc. 17-2). The AAA Employment Arbitration Rules and Mediation Procedures provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement." AAA Employment Arbitration Rules and Mediation Procedures, §6, www.adr.org. Courts have held that incorporation of the rules of the AAA, which provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement," constitutes "clear and unmistakable" evidence of an agreement to arbitrate arbitrability. *Bollinger Shipyards Lockport, LLC v. Northrop Grumman Ship Systems, Inc.*, 2009 WL 86704 (E.D. La. 2009)(internal citations omitted); *see also Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366 (Fed. Cir. 2006). For this additional reason, the court concludes that the parties intended to reserve the issue of arbitrability to the arbitrator.

[6] Based on the language of the Mutual Arbitration Agreement that provides that "all disputes and claims between [plaintiff and defendant], including those relating to Employee's employment with company and any separation therefrom... shall be determined exclusively by final and binding arbitration ...," the parties ultimately agreed that the issues involving the enforceability of the Separation Agreement would be subject to arbitration. The court need not decide this issue, or the attendant scope issue, however, because *all* issues with respect to arbitrability are reserved for the arbitrator. *See* rec. doc. 17-2.

– a legitimate argument could be made either way that an issue is subject to arbitration. *Agere Systems, Inc. v. Samsung Electronics Co., Ltd.*, 560 F.3d. at 341.

The Mutual Arbitration Agreement provides in pertinent part that "all disputes and claims between [plaintiff and defendant], including those relating to Employee's employment with company and any separation therefrom... shall be determined exclusively by final and binding arbitration ..." (rec. doc. 17-2). The Fifth Circuit has held that arbitration clauses that contain the "any disputes," "relating to," or "connected with" language constitute "broad" arbitration clauses, which are not limited to claims that literally "arise under the contract," but rather embrace all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute. *Pennzoil Exploration and Production Co. v. Ramco Energy Ltd.,* 139 F.3d 1061, 1067 (5th Cir. 1998); *In re Complaint of Hornbeck Offshore Corp.*, 981 F.2d 755, 754 (5th Cir. 1993); *Mesa Operating Limited Partnership v. Louisiana Intrastate Gas Corp.*, 797 F.2d 238, 244 (5th Cir. 1986). In *Pennzoil Exploration v. Ramco Energy,* the court further described the necessary connection to establish that an issue "relates to" the contract:

> Pursuant to the JOA's arbitration clause, "any" dispute arising out of "or in relation to" or "in connection with" the JOA shall be settled by arbitration. Therefore, it is not necessary that the dispute arise out of the JOA to be arbitrable – but only that the dispute "relate to" or be "connected with" the JOA.  *See Commerce Park*; 729 F.2d at 339, n.4.  With such a broad arbitration clause, it is only necessary the the dispute "touch" matters covered by the JOA to be arbitrable.  *See Mitsubishi*, 473 U.S. at 625 n.14, 105 S.Ct at 3353 n. 14; *Commerce Park*, 729 F.2d at 339 n.4.

*Id.* at 1068.

Defendant argues that the clause in the MAA calls for *all* disputes between plaintiff and defendant to be subject to arbitration, *including* those related to employment. In other words, the dispute does not have to be related to employment, but here, defendant further contends that plaintiff's copyright claims are "related to" his employment with defendant

based on the implied license and work for hire doctrines, and there is no evidence at this time to the contrary.[7]  Thus, there is a legitimate dispute over whether plaintiff's copyright claims are "related to" his employment.  Based on the broad "all disputes" language of the Mutual Arbitration Agreement and the legitimate dispute over whether plaintiff's copyright claims "relate to" his employment, the court cannot say that the assertion of arbitrability is "wholly groundless" or that none of the issues involving copyright "touch" upon matters of employment.[8]  The court need not reach any additional arguments with regard to scope, having found that in this instance, it is the arbitrator who must make those decisions.

The language of the Mutual Arbitration Agreement indicates that the parties clearly agreed to submit the issue of arbitrability, *i.e.*, whether a particular dispute is subject to arbitration, to the arbitrator.  Thus, the arbitrator has the authority to determine which disputes between the parties are subject to arbitration.  This matter should be stayed until the arbitrator determines the scope of the issues subject to arbitration and then resolves those issues that he/she determines are subject to arbitration.

## Recommendation

**IT IS RECOMMENDED** that defendant's motion to dismiss or, alternatively, motion to refer to binding arbitration (rec. doc. 17) should be **DENIED IN PART AND GRANTED**

---

[7]  The parties have not engaged in discovery.

[8]  Plaintiff also argued the arbitration agreement was not enforceable based on the provision of the Texas Arbitration Act that mandates that agreements to arbitrate must be signed by each party's lawyer, which was not done in this case. *See* Tex. Civ. Prac. & Rem. Code Ann. §171.001. The court in *Jones v. Halliburton Co.*, 2009 WL 2940061 (5th Cir. 2009), recently held that "to the extent ... §171.001 of the TAA affects the enforceability of the agreement, it would be preempted by the FAA." *Jones,* at *5 citing *Jones v. Halliburton Co.*, 625 F.Supp.2d 339 (S.D. Tex. 2008). The court further concluded that "whether Jones' claims fall outside the scope of the arbitration provision is not based on the public policy stated in the TAA." *Id.*  Thus, plaintiff's argument that the arbitration provision is unenforceable under the TAA does not support a finding that defendant's assertion of arbitrability is "wholly groundless."

**IN PART.** The motion to dismiss should be **DENIED**, and the motion to refer to binding arbitration should be **GRANTED** for the arbitrator to decide only those issues he/she first determines to be arbitrable**.**

**IT IS FURTHER RECOMMENDED** that plaintiff's cross motion for partial summary judgment (rec. doc. 19) should be **DISMISSED** without prejudice pending arbitration.

**IT IS FURTHER RECOMMENDED** that this action should be **STAYED** until the conclusion of the arbitration proceeding.

Signed in Baton Rouge, Louisiana, on January 12, 2010.

_____

**MAGISTRATE JUDGE DOCIA L. DALBY**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **PAUL C. TRAYLOR** | **CIVIL ACTION** |
| **VERSUS** | **NUMBER 08-840-RET-DLD** |
| **D.R. HORTON, INC.** | |

**NOTICE**

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. §636(b)(1), you have fourteen (14) days from date of receipt of this notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report. A failure to object will constitute a waiver of your right to attack the factual findings on appeal.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on January 12, 2010.

_____
**MAGISTRATE JUDGE DOCIA L. DALBY**